NEWMAN, Circuit Judge,
dissenting.
I respectfully dissent, for the Court of Federal Claims was correct in affirming the action of the Internal Revenue Service in applying the extended six-year period of limitations of 26 U.S.C. (“I.R.C.”) § 6501(e)(1)(A) to the assessment of income tax on the sale of the Salman Ranch.[1] The IRS explained that the standard three-year limitations period did not apply because the taxpayer omitted from gross income “an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return.” 26 U.S.C. § 6501(e)(1)(A). The parties stipulated, for the purpose of determining the applicable limitations period, that the taxpayer incorrectly included certain items of cost in its tax basis, thereby overstating the basis and reducing the taxable gain on the sale of the Ranch.
The appellants argue that the Supreme Court, in Colony, Inc. v. Commissioner, 357 U.S. 28, 78 S.Ct. 1033, 2 L.Ed.2d 1119 (1958), held that the three-year period of limitations cannot be extended on the ground of an erroneous overstatement of basis, even when the 25 percent criterion of substantial omission is met. The appellants also argue that other criteria of subsection 6501(e)(1)(A) bar application of the six-year period, pointing out that the gross proceeds of the sale of the Ranch were fully reported, in keeping with subsection 6501(e)(1)(A)(i); that this reporting provided adequate disclosure to the IRS of any errors, in keeping with subsection 6501(e)(1)(A)(ii); and that an overstatement of basis is not an omission from gross income, as was recognized by the Court in Colony. The Court of Federal Claims held that these arguments did not negate application of the six-year period of limitations, and granted the government’s motion for summary judgment. In my view the Court of Federal Claims correctly applied the law to the undisputed or stipulated facts.
BACKGROUND
The transactions are not disputed. In brief, since January 1, 1987 the Salman Ranch in New Mexico was owned by a limited partnership, in which the partners were family members and a family trust. *1378 On or about October 8, 1999 the partners individually entered into various short sales of U.S. Treasury Notes, for cash proceeds totaling $10,982,373. On or about October 13, 1999 the partners transferred these cash proceeds and their short positions to the Salman Ranch partnership. Soon thereafter the partnership closed all of the short positions, at a cost of $10,980,688. On November 30, 1999 the partners transferred their interests, through intervening family partnerships, under conditions that terminated the Sal-man Ranch partnership as a matter of law, see I.R.C. § 708(b)(1)(B),[2] and formed the new Salman Ranch partnership that on December 23, 1999 sold part of the Ranch for a total price of $7,188,588 (including an option for the remainder of the Ranch).
Tax returns for 1999 were duly filed. The original Salman Ranch partnership filed a return for the period ending November 30, 1999. The return stated an election under I.R.C. §§ 754 and 743(b) to adjust the basis of partnership property, but did not state the nature or amount of the adjustment.
The new Salman Ranch partnership filed a separate 1999 return covering the one-month period of December 1999. The return reported the sale price of $7,188,588 for the Ranch, and a tax basis of $6,850,276. This basis included an amount from the Treasury Note transactions, although the return did not so state,[3] and the difference of $338,312 was reported as “net section 1231 gain.”[4] This return also contained a statement of election under 1. R.C. §§ 754 and 743(b) to adjust the basis of partnership property, but did not state the nature or amount of the adjustment.
The individual partners’ tax returns included amounts in accordance with their shares in the partnership, including their share of the net section 1231 gain from the sale of the Ranch. Several partners reported small losses on the Treasury Note transactions. No return, for the Ranch partnerships or the partners, flagged the relationship between the Treasury Note transactions and the calculation of basis in the Ranch property.
Six years minus one week later, the IRS issued a Final Partnership Administrative Adjustment (FPAA), reducing the basis of the Ranch to $1,917,978, thereby increasing the capital gain from $338,312 to $4,906,261. The IRS stated that “Salman Ranch Ltd. was availed of for improper tax avoidance purposes by artificially overstating basis in the partnership interests of its partners through a transaction that was substantially similar to that described in Notice 2000-44.” Notice 2000-44, entitled “Tax Avoidance Using Artificially High Basis,” describes a procedure that the IRS calls “Son of BOSS,” where “BOSS” stands for “Bond and Option Sales Strategy,” in which transactions in securities are employed to create an artificially high basis in unrelated property. 2000-2 C.B. 255. See generally Kligfeld Holdings v. Comm’r, 128 T.C. 192, 194-99, 2007 WL 1556083 (2007) (describing “Son of BOSS” as a tax avoidance scheme). According to the FPAA, “The proceeds from the short sale of the Treasury Notes and other assets *1379 purportedly contributed to Salman Ranch Ltd. are treated as never having been contributed to said partnership and any gains or losses purportedly realized by said partnership are treated as having been realized by its partners.”
Salman Ranch Ltd. (the appellant herein, along with William J. Salman, as tax matters partner) filed suit in the Court of Federal Claims pursuant to I.R.C. § 6226, arguing that in accordance with statute and precedent the three-year limitations period of I.R.C. § 6501(a) applies, whereby the FPAA was untimely and void. The panel majority, reversing the judgment of the Court of Federal Claims, holds that the Supreme Court in Colony, supra, established the rule that an erroneous overstatement of basis is not grounds for extending the limitations period, and that this rule applies in this case. However, the Court’s holding in Colony does not control the situation herein.
DISCUSSION
Section 6501 of the Revenue Code of 1954 states the time periods during which the IRS can act to assess unpaid taxes. Subsection 6501(a) states the general rule that assessments must be made “within 3 years after the return was filed,” and subsequent subsections state exceptions to the general rule. The exception that is here at issue sets the statutory limit at six years when there has been a “substantial omission” from gross income:
§ 6501(e) Substantial omission of items.' — Except as otherwise provided in subsection (c)—
(1) Income taxes. — In the case of any tax imposed by subtitle A—
(A) General rule. — If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—
(i) In the case of a trade or business, the term “gross income” means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and
(ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.
This extension to six years does not require a showing or charge of fraud or evasion. See Badaracco v. Comm’r, 464 U.S. 386, 392, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (contrasting § 6501(e)(1)(A), which “provides an extended limitations period for the situation where the taxpayer’s return nonfraudulently omits more than 25% of his gross income,” with the unlimited extensions of § 6501(c)).
The two subparagraphs (i) and (ii) were added in 1954 to the predecessor statute, § 275(c) of the 1939 Tax Code. In explaining the 1954 Code revision, the legislative record states that “[sjeveral changes from existing law have been made in subsection (e) of this section,” explaining that in § 6501(e)(1)(A):
The term gross income as used in this paragraph has been redefined to mean the total receipts from the sale of goods or services prior to diminution by the cost of such sales or services.
*1380 H.R.Rep. No. 83-1337, at A414 (1954), reprinted at 1954 U.S.C.C.A.N. 4017, 4561; S.Rep. No. 83-1622, at 584 (1954), reprinted at 1954 U.S.C.C.A.N. 4621, 5233.
A
The Court remarked in Colony that the ambiguity treated in the Colony decision was resolved by this 1954 legislative change. See Colony, 357 U.S. at 31-32, 78 S.Ct. 1033. Thus the Court limited its holding to interpretation of § 275(c) of the 1939 Code, while observing that “the conclusion we reach is in harmony with the unambiguous language of § 6501(e)(1)(A),” id. at 37, 78 S.Ct. 1033. Both the Court in Colony and the Court of Federal Claims recognized that the legislative changes, implemented through the addition of subparagraphs (i) and (ii), resolved the situation confronted in Colony, for there the taxpayer had fully reported the total receipts of its business in sales of residential lots, but had overstated the basis of the sales in that it included certain unallowable development costs. The Court held that these fully disclosed overstatements of costs incurred did not serve to extend the period of limitations.
My colleagues on this panel hold that Colony requires that an erroneous overstatement of basis can never serve to extend the period of limitations. That is an unwarranted enlargement of the holding in Colony. In Colony the taxpayer reported its gross receipts as a developer and seller of real property, and included in its basis some development costs that the IRS determined were not allowable. The Court held that the taxpayer could not, after the three-year period of limitations, be assessed for omitted net income under the 1939 Code § 275(c), because adequate detail of the basis information was shown on the tax return itself. See Colony, Inc. v. Comm’r, 26 T.C. 30, 35-40, 1956 WL 878 (1956) (discussing details of taxpayer’s basis calculations), aff'd, 244 F.2d 75 (6th Cir.1957), rev’d, 357 U.S. 28, 78 S.Ct. 1033, 2 L.Ed.2d 1119 (1958). The Court found that the IRS had all the information it needed to discover the error, and held that the three-year limitations period was not subject to extension on these facts. The Court explained:
We think that in enacting § 275(c) Congress manifested no broader purpose than to give the Commissioner an additional two [now three] years to investigate tax returns in cases where, because of a taxpayer’s omission to report some taxable item, the Commission is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item.
357 U.S. at 36, 78 S.Ct. 1033. This rationale aligns with the “safe harbor” for adequate disclosure as codified in 1954 at subsection 6501(e)(l)(A)(ii).
The Court of Federal Claims found that, unlike the situation in Colony, the Salman Ranch partnership did not disclose the various transactions in Treasury Notes in a way that would alert the IRS to the content of the basis adjustment for the Ranch sale. The court observed that the partnerships’ and partners’ tax returns provided no “idea of the method by which plaintiffs reached their calculation of basis.” Salman Ranch, 79 Fed.Cl. at 204. The court stated: “To understand how plaintiffs reached their basis step-up figure, one must have a ‘clue’ that a transfer of the proceeds from the short sale of the Treasury Notes to the partnership took place — a fact that is not apparent from the face of the returns viewed together.” Id.
The Court of Federal Claims found that the “critical facts that the Treasury Notes transaction was a short sale and that the accompanying obligation to close the short position was transferred to the partnership, along with the proceeds, are not dis *1381 closed in substance or by implication anywhere in the returns.” Id. Although the appellants argue that nothing prevented the IRS from investigating the sale of the Ranch within the three-year limitations period, their manner of reporting indeed placed the Commissioner at a “special disadvantage in detecting errors,” Colony, 357 U.S. at 36, 78 S.Ct. 1033. The error herein amounts to at least 25 percent of gross income, and therefore the provisions of § 6501(e)(1)(A) authorize the enlargement of the period of limitations.
My colleagues on this panel are mistaken in their holding that the Salman Ranch tax returns are immune from assessment because the three-year limitations period has passed. Neither the Court’s holding in Colony, nor § 6501(e)(1)(A), supports this conclusion. The question is not whether the basis for the Salman Ranch sale was correct, for the taxpayer now concedes that it was not. The question is whether the period of limitations is subject to extension to six years. My colleagues are mistaken in holding that the Court’s ruling in Colony requires that an incorrectly calculated basis can never justify enlargement of the period of limitations.
B
The Court of Federal Claims ruled that the “adequate disclosure” provision of subsection 6501(e) (1) (A) (ii) was not met. This ruling is consistent with the view of other circuits. For example, the Fifth Circuit has stated: Phinney v. Chambers, 392 F.2d 680, 685 (5th Cir.1968) (quoting Colony, 357 U.S. at 36, 78 S.Ct. 1033). The Tax Court also has stated that “with respect to taxable years beginning after August 17, 1954, Congress had already resolved the problem addressed in [Colony ] by enacting section 6501(e)(1)(A) of the 1954 Code.” Lawson v. Comm’r, 67 T.C.M. (CCH) 3121, 1994 WL 273946, at *4.
We conclude that the enactment of subsection (ii) as a part of section 6501(e)(1)(A) makes it apparent that the six year statute is intended to apply where there is either a complete omission of an item of income of the requisite amount or misstating of the nature of an item of income which places the “commissioner ... at a special disadvantage in detecting errors.”
Courts have had varying views about the application of Colony in different fact settings. For example, in CC & F Western Operations Ltd. Partnership v. Commissioner, 273 F.3d 402 (1st Cir.2001), the court noted that ‘Whether Colony’s main holding carries over to section 6501(e)(1) is at least doubtful. That section’s first ‘special rule’ adopts Justice Harlan’s gross receipts test but only for sales of goods and services. The arguable implication is that it does not apply under section 6501 to other types of income.” Id. at 406 n. 2. In Bakersfield Energy Partners LP v. Commissioner, 568 F.3d 767 (9th Cir.2009), the court applied Colony to hold that a revaluation of a property’s oil and gas reserves as an adjustment to basis was not grounds for extension of the three-year limitations period, for the partnership explicitly disclosed the transfers and basis calculation with the partnership’s tax return. In contrast with the Salman Ranch transactions, in Bakersfield as in Colony the items of basis were directly related to the product sold and the business of the seller/taxpayer. Transactions in Treasury Notes are unrelated to either the ranching business or the sale of the Ranch.
Transactions that are economically meaningless in the context for which tax benefits are claimed are not, by virtue of the Court’s holding in Colony, validated by simply designating the costs as “basis” for unrelated property. See, e.g., Kornman & Assocs. v. United States, 527 F.3d 443, 456, *1382 462 (5th Cir.2008) (“Appellants’ premeditated attempt to transform this wash transaction (for economic purposes) into a windfall (for tax purposes) is reminiscent of an alchemist’s attempt to transmute lead into gold.”); Cemco Investors, LLC v. United States, 515 F.3d 749, 751 (7th Cir. 2008) (“A transaction with an out-of-pocket cost of $6,000 and no risk beyond that expense, while generating a tax loss of $3.6 million, is the sort of thing that the Internal Revenue Service frowns on. The deal as a whole seems to lack economic substance .... ”).[5]
The Federal Circuit has applied the economic substance doctrine in various contexts, and in Coltec Industries, Inc. v. United States, 454 F.3d 1340 (Fed.Cir. 2006), this court held that a company’s transfer of certain liabilities to effect an increase in basis lacked economic substance, stating: “Over the last seventy years, the economic substance doctrine has required disregarding, for tax purposes, transactions that comply with the literal terms of the tax code but lack economic reality.” Id. at 1352. The Court of Federal Claims applied Coltec to rule, in Jade Trading, LLC v. United States, 80 Fed.Cl. 11, 52 (2007), that a “Son of BOSS” scheme lacked economic substance. These consistent views weigh against my colleagues’ holding that fidelity to Colony requires that the overstatement of the basis of the Ranch is insulated from inquiry after the three-year period of limitations.
This appeal concerns solely the question of which limitations period applies, and for the purpose of resolving this question the appellants have stipulated that their basis calculation was in error. However, it is highly relevant that the nature of the erroneous basis claim herein is markedly different from the more conventional basis error in Colony, and no “clue” to this different nature was presented with the Salman Ranch returns. To summarize precedent, courts have generally applied the rationale of Colony to deny extension of the limitations period where taxpayers made errors in basis that were reasonably identifiable from the information in their tax returns. But courts have applied the six-year period where basis errors arose from economically meaningless transactions that were unrelated to the property sold and that were not disclosed on the returns. This case is a paradigm of the latter category.
C
The appellants argue that even if this court should rule that their overstatement of basis is not shielded by Colony, nonetheless section 6501(e)(1)(A) does not extend the period of limitations beyond three years, because the “gross receipts” from the sale of the ranch were fully reported. The appellants argue that no more is required by subsection 6501(e)(l)(A)(i), which defines “gross income” to mean gross receipts (rather than net gains) in the context of sales of goods or services by a trade or business. That argument is negated by the partnership’s reporting of the proceeds from sale of the Ranch as “net section 1231 gain.” Section 1231 is directed to “real property used in the *1383 trade or business, held for more than 1 year.” See n. 2 supra. The Ranch sale proceeds are not income from sales of “goods or services,” but are gain from the sale of real property. For section 1231 income, the Tax Code states that it is the gain that constitutes gross income. See I.R.C. § 61(a) (defining gross income to include “Gains derived from dealings in property”); Treas. Reg. § 1.61-6(a) (“Gain realized on the sale or exchange of property is includible in gross income, unless excluded by law”).
The appellants propose that the Ranch itself is a “good or service” sold by the partnership in the course of business, and that the definition of gross income in subsection 6501(e)(l)(A)(i) applies. There is no support for that theory. The appellants seek analogy in a Treasury Regulation that pertains to itemized deductions for charitable contributions, see Treas. Reg. 1.170A-13(f)(5). However, the Court of Federal Claims correctly observed that “Section 1231 income is treated quite differently for tax purposes than ‘trade or business income,’ which is reported and taxed as ordinary income,” explaining that Treasury Regulation 1.170A-13(f)(5) does not support the appellants’ reading of subsection 6501(e)(l)(A)(i). Salman Ranch, 79 Fed.Cl. at 201 & n. 11. The appellants have shown no error in the court’s holding that the “gross receipts” provision in subsection (i) does not apply to the income at issue in this case.
CONCLUSION
Colony was not a broad exoneration of inquiry, after three years, into items simply because they are denominated as “basis.” The Court of Federal Claims gave correct effect to the full text of I.R.C. § 6501(e)(1)(A), and nothing in its decision misconstrues the Court’s holding in Colony. The taxpayers herein omitted over 25 percent of their gross income, but did not provide sufficient information to apprise the Commissioner of the nature and amount of the omission. It seems clear that the criteria of subsection 6501(e)(1)(A) were met, extending the limitations period to six years. From my colleagues’ contrary ruling, I respectfully dissent.

. Salman Ranch Ltd. v. United States, 79 Fed. Cl. 189 (2007).

. The parties refer to § 708(b)(1)(B) as a "technical termination” because there was a record change in more than 50% of the ownership interests in the partnership’s property.

. It is agreed that the basis in the Ranch without the Treasury Note transactions was $1,917,978.

. Section 1231 is a capital gains provision that includes sales of "real property used in the trade or business, held for more than 1 year,” as long as that property is not "inventory” or property held “primarily for the sale to customers in the ordinary course of his trade or business,” with certain exceptions not relevant here. See I.R.C. § 1231(b)(1).

. District courts that have addressed similar situations have held that the longer limitations period applies. See Home Concrete & Supply, LLC v. United States, 599 F.Supp.2d 678, 687 (E.D.N.C.2008) (§ 6501(e)(1)(A) applies where taxpayers used short sales of Treasury Notes to manipulate basis of partnership-held assets); Burks v. United States, No. 3:06-CV-1747-N (N.D. Tex. June 13, 2008) (docket entry 36) (§ 6501(e)(1)(A) applies where taxpayers engaged in a "Son of BOSS” scheme); Brandon Ridge Partners v. United States, No. 8:06-cv-1340-T-24 MAP, 2007 WL 2209129, at *8 (M.D.Fla. July 30, 2007) (basis of stock was improperly overstated upon various transactions involving Treasury Notes).