# United States Court of Appeals for the Federal Circuit

2008-5053

SALMAN RANCH LTD and WILLIAM J. SALMAN,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.


Alan Poe, Holland & Hart LLP, of Greenwood Village, Colorado, argued for plaintiffs-appellants. With him on the brief was Adam M. Cohen, of Denver, Colorado.

Joan I. Oppenheimer, Attorney, Appellate Section, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Richard T. Morrison, Deputy Assistant Attorney General, Gilbert S. Rothenberg and Michael J. Haungs, Attorneys.

Appealed from: United States Court of Federal Claims

Judge Christine O.C. Miller

# United States Court of Appeals for the Federal Circuit

2008-5053

SALMAN RANCH LTD and WILLIAM J. SALMAN,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in case no. 06-CV-503, Judge Christine O.C. Miller.

———————————————————

DECIDED: July 30, 2009

———————————————————

Before NEWMAN and SCHALL, <u>Circuit Judges</u>, and PATEL, <u>District Judge</u>.[*]

Opinion for the court filed by <u>Circuit Judge</u> SCHALL. Dissenting opinion filed by <u>Circuit Judge</u> NEWMAN.

SCHALL, <u>Circuit Judge</u>.

This is a tax case. On April 10, 2006, the Internal Revenue Service ("IRS") issued a Final Partnership Administrative Adjustment ("FPAA") adjusting the 1999 partnership tax return filed by Salman Ranch Ltd (the "Partnership"). On July 5, 2006, the Partnership and William J. Salman, the Partnership's tax matters partner (together,

———————————————————

[*] The Honorable Marilyn Hall Patel, District Judge, United States District Court for the Northern District of California, sitting by designation.

"Appellants"), filed suit in the United States Court of Federal Claims, challenging the validity of the FPAA pursuant to 26 U.S.C. ("I.R.C.") § 6226.[1] In due course, Appellants moved for summary judgment on the ground that the FPAA was untimely under the three-year statute of limitations of I.R.C. §§ 6501(a) and 6229(a). Therefore, according to Appellants, the adjustments in the FPAA were of no effect. The government cross-moved for partial summary judgment, seeking a ruling that the FPAA was timely. Ruling on Appellants' motion and the government's cross-motion, the court rejected the argument that the three-year statute of limitations controlled the issuance of the FPAA. Instead, the court held, the IRS was entitled to the benefit of the six-year statute of limitations of I.R.C. §§ 6501(e)(1)(A) and 6229(c)(2). Salman Ranch Ltd v. United States, 79 Fed. Cl. 189, 204 (2007).

On December 6, 2007, the Court of Federal Claims certified its ruling for interlocutory review pursuant to 28 U.S.C. § 1292(d)(2). Salman Ranch Ltd v. United States, No. 06-CV-503, slip op. at 6–7 (Ct. Fed. Cl. Dec. 6, 2007). Thereafter, on March 11, 2008, we granted Appellants permission to appeal. Salman Ranch Ltd. v. United States, 273 F. App'x 926, 927 (Fed. Cir. 2008). For the reasons set forth in this opinion,

---

[1] Pursuant to 28 U.S.C. § 1508, the Court of Federal Claims has jurisdiction to hear and render judgment upon any petition under I.R.C. § 6226. Subsection (a) of § 6226 provides:

(a) Petition by tax matters partner.—Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year with—

(1) the Tax Court,

(2) the district court of the United States for the district in which the partnership's principal place of business is located, or

(3) the Court of Federal Claims.

we now reverse the decision of the Court of Federal Claims that the IRS was entitled to the benefit of the six-year statute of limitations. Since it is undisputed that, without the benefit of that limitations period, the FPAA was untimely and thus invalid, the case is remanded to the Court of Federal Claims with the instruction that it enter judgment in favor of Appellants.

BACKGROUND

I.

The pertinent facts are set forth in the decision of the Court of Federal Claims. Salman Ranch ("Salman Ranch" or the "ranch") operates in Mora County, New Mexico. Salman Ranch, 79 Fed. Cl. at 190. On January 1, 1987, the owners of the ranch formed the Partnership. Principal shareholders included William J. Salman, the Partnership's tax matters partner, David M. Salman, Frances S. Koenig, and the Frances D. Salman Testamentary Trust. Other shareholders included various Salman and Koenig family members. In exchange for partnership shares, the owners transferred their interests in the ranch to the Partnership.

On October 8, 1999, the Salman Ranch partners entered into short sale transactions involving U.S. Treasury Notes. In these transactions, the partners borrowed Treasury Notes from a third party and sold them for cash to another third party. A short sale gives rise to an obligation, known as a short position, to replace the borrowed security. See Zlotnick v. TIE Commc'ns, 836 F.2d 818, 820 (3d Cir. 1988) (explaining a typical short sale).

The short sales generated cash proceeds of $10,982,373. Salman Ranch, 79 Fed. Cl. at 190. William J. Salman, in his capacity as tax matters partner, declared in

the Court of Federal Claims that the Salman Ranch partners transferred both the approximately $10.9 million in cash proceeds from the short sales and the accompanying short positions (the obligation following the short sale to replace the borrowed securities, i.e., Treasury Notes) to the Partnership on October 13, 1999 (Decl. ¶ 13). Some time thereafter, but before November 30, 1999, the Partnership purportedly closed the short position on the Treasury Notes at a cost of $10,980,866 (Decl. ¶ 14). Specifically, the Partnership sold the Notes, which it had received from the partners, for $10,982,373, and then used that money to pay back the party from whom the partners had borrowed the Notes.

On November 30, 1999, the Salman Ranch partners contributed a portion of their partnership interests to three newly formed family partnerships. Salman Ranch, 79 Fed. Cl. at 191. As a result, each family partnership held a partnership interest in the Partnership. The Partnership in turn held the ranch.

The partners' transfer of interests in the Partnership to the three family partnerships triggered a technical termination of the Partnership under I.R.C. § 708(b)(1)(B).[2] This technical termination allowed an adjustment in the basis of the ranch under I.R.C. §§ 754 and 743(b)(1).[3] The adjustment purportedly increased the Partnership's basis in the ranch to $6,850,276—a step-up in basis reflecting the original basis in the ranch, plus an allocated portion of the value of the short-sale cash proceeds contributed to the Partnership. Salman Ranch, 79 Fed. Cl. at 191.

---

[2] I.R.C. § 708(b)(1)(B) states the "[g]eneral rule" that "a partnership shall be considered as terminated . . . if . . . within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits."

[3] Pursuant to I.R.C. §§ 754 and 743(b)(1), if a partnership files an election in accordance with regulations prescribed by the Secretary of the Treasury, the basis of partnership property is adjusted by an amount that is determined by a specified formula.

On December 23, 1999, the Partnership sold a portion of the ranch and an option to acquire the remainder of the ranch. In its final partnership return for the period ending December 31, 1999, which was filed on or about April 13, 2000, the Partnership reported the sale of the ranch.[4] The Partnership's return reported the gross sales price of the ranch as $7,188,588, the basis of the property as $6,850,276, and the resulting gain from the sale as $338,312. For the 1999 tax year, the individual tax return (IRS Form 1040) of each partner reported an amount purporting to be the respective share of each partner from the sale of the ranch.

"The IRS may challenge the reporting of any partnership item on a partnership tax return (Form 1065) by issuing an FPAA, which serves as a predicate to its making individual partner tax assessments. I.R.C. §§ 6223(a)(2), 6225(a)." AD Global Fund, LLC v. United States, 481 F.3d 1351, 1352–53 (Fed. Cir. 2007). On April 10, 2006, the IRS issued the FPAA in this case. In it, the IRS stated:

> Salman Ranch Ltd. was availed of for improper tax avoidance purposes by artificially overstating basis in the partnership interests of its partners . . . . The transactions involving short sales of Treasury Notes, including the formation of Salman Ranch Ltd., the acquisition of short positions in said Treasury Notes, the contribution of said Treasury Note positions to Salman Ranch Ltd. and the assignment of partnership interests to [the family limited partnerships] had no business purpose, lacked economic

---

[4] A partnership itself is not liable for the payment of income taxes. See I.R.C. § 701. However, each year a partnership must file an information return (IRS Form 1065) reporting items of gross income and allowable deductions. See id. § 6031(a). The tax treatment of a partnership item, which is "any item required to be taken into account for the partnership's taxable year," id. § 6231(a)(3), is determined at the partnership level. See id. § 6221. Partnership items then are allocated among the partners, who bear the tax consequences of them. See id. § 702. The allocation to each partner is reported on a Schedule K-1 to the partnership's Form 1065 return. Each partner must report his or her distributive share of the allocated partnership items. See id. Pursuant to I.R.C. § 6222(a), partners, on their individual returns, are required "to treat partnership items consistently with the item's treatment on the partnership information return." Olson v. United States, 172 F.3d 1311, 1316 (Fed. Cir. 1999).

substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes.

In other words, the FPAA asserted that a series of sham transactions, involving the technical termination of the Partnership, served to understate reported gains from the ranch's sale and to reduce the partners' aggregate federal tax liability. By inflating its basis in the ranch by a portion of the short sale proceeds while failing to offset that basis by the assumption of its obligation to close the short sale, the Partnership allegedly created an improper tax shelter.

Accordingly, to account for the short sale transactions, the IRS proposed an adjustment to the Partnership's treatment of its sale of the ranch on its December 31, 1999 partnership return. The adjustment reduced the basis in the ranch by subtracting the Partnership's obligation to close the short position on the Treasury Notes. This resulted in a corrected basis of the ranch in the amount of $1,917,978. Id. at 6. Thus, the IRS took the position that the Partnership's capital gain that resulted from the sale of the ranch should have been $4,906,261 instead of $338,312. The IRS therefore found capital gain understated by $4,567,949. This resulted in increased tax liability for the partners arising from their reporting, on their individual 1999 tax returns, their proportionate shares of the Partnership's gain on the sale of the ranch.

II.

On July 5, 2006, Appellants filed their complaint for readjustment of partnership items in the Court of Federal Claims, pursuant to I.R.C. § 6226, challenging the validity of the FPAA. Thereafter, Appellants moved for summary judgment, seeking a determination that the FPAA was untimely and therefore could not result in an

adjustment of Partnership items. The government cross-moved for partial summary judgment, seeking a ruling that the FPAA was timely.

The general statute of limitations for assessment and collection of taxes is at I.R.C. § 6501(a), which provides that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." The three-year statute of limitations in I.R.C. § 6501(a) also applies to taxes imposed for partnership items. See AD Global Fund, 481 F.3d at 1354 ("Section 6501 explicitly provides that it applies to any tax imposed by the title, which would include tax imposed for partnership items. No exception is provided for assessment of taxes for partnership items." (citation and footnote omitted)); see also I.R.C. § 6229(a) (setting forth a minimum period of three years for assessments of partnership items).[5] In the Court of Federal Claims, Appellants argued that the time for the IRS to issue the FPAA was governed by the three-year statute of limitations set forth in § 6501(a). Salman Ranch, 79 Fed. Cl. at 192. Thus, according to Appellants, the FPAA should have been issued on or before December 31, 2003, no later than three years after the last day the Partnership's return could have been filed.

---

[5] I.R.C. § 6229(a), titled "Period of limitations for making assessments," states:

> (a) General rule.—Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of—
>
> > (1) the date on which the partnership return for such taxable year was filed, or
> >
> > (2) the last day for filing such return for such year (determined without regard to extensions).

Pursuant to I.R.C. § 6501(e)(1)(A), however, the limitations period for assessment and collection of taxes is extended from three to six years if the taxpayer's return reflects a "[s]ubstantial omission of items":

> (e) Substantial omission of items.—Except as otherwise provided in subsection (c)—
>> (1) Income taxes.—In the case of any tax imposed by subtitle A—
>>> (A) General rule.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—
>>>> (i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and
>>>> (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

I.R.C. § 6501(e)(1)(A). Language paralleling § 6501(e)(1)(A), but without subsections (i) and (ii), may be found in I.R.C. § 6229(c)(2). Section 6229(c)(2) states that "[i]f any partnership omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in its return, [§ 6229](a) shall be applied by substituting '6 years' for '3 years'." In opposing Appellants' motion and cross-moving for partial summary judgment on the grounds that the FPAA was timely, the government argued that the time period for assessing taxes attributable to partnership items was open because the FPAA was issued within the six-year statute of

limitations period set forth in I.R.C. § 6501(e)(1)(A), or in § 6229(c)(2). <u>Salman Ranch</u>, 79 Fed. Cl. at 192.

Appellants responded that the six-year limitations period did not apply because an overstatement of basis, assuming there is one, does not constitute an omission from gross income. <u>Id.</u> at 193. Specifically, Appellants argued that the word "omits," used in I.R.C. § 6501(e)(1)(A) for individuals, or in § 6229(c)(2) for partnerships, has a settled interpretation that does not include errors arising from an overstatement of basis. <u>Id.</u> at 194. In support of their position, Appellants relied primarily upon <u>Colony, Inc. v. Commissioner</u>, 357 U.S. 28 (1958).

In <u>Colony</u>, the IRS assessed deficiencies in Colony, Inc.'s income taxes for fiscal years 1946 and 1947. 357 U.S. at 30. There was no claim that Colony had inaccurately reported its gross receipts. Rather, the contention was that Colony had understated its gross profits on the sales of certain lots of land for residential purposes as a result of having overstated the "basis" of the lots by erroneously including in their cost certain unallowable items of development expense. The issue before the Court was whether the assessments were barred by the three-year statute of limitations in I.R.C. § 275(a) or whether they were covered by the five-year statute of limitations in I.R.C. § 275(c). <u>Id.</u> at 29. These statutes were the predecessors to present I.R.C. §§ 6501(a) and 6501(e)(1)(A).[6] The Court interpreted the statutory language "omits

---

[6] The pertinent provisions of § 275 were as follows:

§ 275. Period of limitation upon assessment and collection.

Except as provided in section 276—

    (a) General rule. The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without

from gross income an amount properly includible therein" in § 275(c) as referring "to the specific situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes." Id. at 33. After concluding that "it cannot be said that the [omits from gross income] language is unambiguous," the Court resorted to the legislative history of § 275(c). Id. Examining that history, the Court located references in committee reports and statements to situations in which taxpayers left items out of their returns, overlooked an item, failed to report a dividend, or reported as income for one year an item of income which properly belonged in another year. Id. at 33–35. The Court found these references to be "persuasive indications that Congress merely had in mind failures to report particular income receipts and accruals, and did not intend the five-year [now six-year] limitation to apply whenever gross income was understated." Id. at 35 (emphasis added).

The Colony Court rejected the government's argument that "in enacting § 275(c) Congress was primarily concerned with providing for a longer period of limitations where returns contained relatively large errors adversely affecting the Treasury." Id. at 36.

---

assessment for the collection of such taxes shall be begun after the expiration of such period.

* * * *

(c) Omission from gross income. If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

I.R.C. § 275 (1939). As can be seen, § 275(c) did not contain the language of subparagraphs (i) and (ii) now found in I.R.C. § 6501(e)(1)(A).

The Court explained that "if the mere size of the error had been the principal concern of Congress, one might have expected to find the statute cast in terms of errors in the total tax or in total taxable net income." Id. The Court then stated:

> We think that in enacting § 275(c) Congress manifested no broader purpose than to give the Commissioner an additional two years [now three years] to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no disadvantage. And this would seem to be so whether the error be one affecting "gross income" or one, such as overstated deductions, affecting other parts of the return.

Id. Accordingly, the Court held that the three-year statute of limitations of § 275(a), rather than the five-year statute of limitations of § 275(c), applied to the deficiencies asserted against Colony. Id.

Appellants argued in the Court of Federal Claims that, because the language of §§ 275(c) and 6501(e)(1)(A) is the same, Colony controls the meaning of "omits from gross income an amount properly includible therein" in § 6501(e)(1)(A), even though Colony interpreted the pre-1954 Internal Revenue Code. Salman Ranch, 79 Fed. Cl. at 194. In making this argument, Appellants pointed to the Supreme Court's statement that its conclusion in Colony was "in harmony with the unambiguous language of § 6501(e)(1)(A) of the Internal Revenue Code of 1954." Id. (quoting Colony, 357 U.S. at 37). Accordingly, Appellants urged that Colony's interpretation of the relevant language in I.R.C. § 275(c) applies to I.R.C. § 6501(e)(1)(A) and forecloses a definition of "omits from gross income an amount properly includible therein" that includes an overstated basis.

The Court of Federal Claims denied Appellants' motion for summary judgment and granted the government's cross-motion for partial summary judgment. Id. at 205. In so doing, the court held that the IRS timely issued the FPAA. Id. at 204. The court concluded that the IRS was entitled to the six-year statute of limitations of I.R.C. § 6501(e)(1)(A), because the government carried its burden of proving that the Partnership made an omission from gross income. Id.

The court determined that the Partnership "omit[ted] from gross income an amount properly includible therein," within the meaning of § 6501(e)(1)(A), when it overstated its basis in the ranch. Id. at 200. Colony did not govern the case, the court concluded, because the sale of the ranch was not in the context of a trade or business. Id. at 201. According to the court, "Colony held that section 275(c) . . . only imposes liability on a taxpayer engaged in a trade or business selling goods or services where the taxpayer 'omitted some income receipt or accrual in his computation of gross income.'" Id. at 200 (quoting Colony, 357 U.S. at 33).

The court based its understanding of Colony's holding on two statements made by the Supreme Court pertaining to the language in § 275(c) and § 6501(e)(1)(A). The court contrasted the Court's statement in Colony that "the conclusion [it reached was] in harmony with the unambiguous language of § 6501(e)(1)(A) of the Internal Revenue Code of 1954," Salman Ranch, 79 Fed. Cl. at 199 (quoting Colony, 357 U.S. at 37 (emphasis added)), with its statement earlier in the opinion, noted above, that the language "omits from gross income an amount properly includible therein" in I.R.C. § 275(c) "cannot be said [to be] unambiguous," id. (quoting Colony, 357 U.S. at 33 (emphasis added)). Since the Supreme Court termed the language of I.R.C.

§ 6501(e)(1)(A) unambiguous, the court deduced that the Supreme Court viewed §§ 275(c) and 6501(e)(1)(A) as "in harmony" as a result of the addition of subparagraphs (i) and (ii) to § 6501(e)(1)(A). Id.

In the court's view, the Supreme Court in Colony was addressing a situation under § 275(c) that is now addressed by subparagraph (i) of § 6501(e)(1)(A). Subparagraph (i) provides that "[i]n the case of a trade or business, the term 'gross income' means the total of the amounts received or accrued from the sale of goods or services . . . prior to diminution by the cost of such sales or services." The court explained that the taxpayer in Colony (Colony, Inc.) was engaged in the trade and business of developing and selling residential real estate lots. Id. (citing Colony, Inc. v. Comm'r, 26 T.C. 30, 31 (1956), rev'd, Colony, 357 U.S. at 38). It also noted that the gross income of a trade or business is usually calculated by subtracting the cost of goods sold from the gross receipts of the sale. Id. Subparagraph (i), the court explained, "provides an exception to this customary definition of gross income in the event of sales of goods or services by a trade or business" because it defines "gross income" as gross receipts, instead of gross receipts less the cost of goods sold. Id. From there, the court reasoned that, when the Colony Court stated that § 275(c) referred "to the situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes," 357 U.S. at 33, it was speaking only in the context of sales by a trade or business. Salman Ranch, 79 Fed. Cl. at 199. Since the court determined that the Partnership's "sale of the ranch [did] not qualify for treatment

under I.R.C. § 6501(e)(1)(A)(i) as the sale of goods or services by a trade or business," id. at 201, it rejected Appellant's reliance on Colony.

Having limited Colony's holding to taxpayers engaged in a trade or business, the court took on the task of defining "omits from gross income" as used in I.R.C. § 6501(e)(1)(A). Id. at 200. The court defined "omits" with reference to the definition of "gross income" in the Internal Revenue Code. Id. An omission from gross income pursuant to I.R.C. § 6501(e)(1)(A), the court concluded, is an "omission from gain," calculated by subtracting basis from gross receipts.[7] Id. Under this definition, either an omission from gross receipts, as in Colony, or an overstatement of the basis figure, as alleged in this case, could result in an omission from gross income under I.R.C. § 6501(e)(1)(A). Id. The court therefore construed "omits from gross income" in I.R.C. § 6501(e)(1)(A) to include the Partnership's alleged reporting of an overstated basis. Id. As a result, the court held that the FPAA was covered by the six-year statute of limitations of § 6501(e)(1)(A). Id.

Based upon its holding, the court denied Appellants' motion for summary judgment and granted the government's cross-motion. Id. at 205. In its decision, the court indicated that, absent a request to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(2), the parties were to submit a Joint Status Report proposing a

---

[7]    The Code defines gross income as including "[g]ains derived from dealings in property." I.R.C. § 61(a)(3); see also Treas. Reg. § 1.61-6(a). Since the transaction at issue in this case involved the sale of ranch property, the court looked to the Code's definition of "gain" from the disposition of property, which is "the excess of the amount realized therefrom over the adjusted basis." I.R.C. § 1001(a); see also Treas. Reg. § 1.61-6(a). Based on these Code definitions, the court defined "gross income" in the context of the sale of property as the calculation of the gain by subtracting the basis from the gross receipts of the sale. Salman Ranch, 79 Fed. Cl. at 200.

schedule for pretrial proceedings and trial.  Id.  Thereafter, following Appellants' application for interlocutory review, which the government did not oppose, the court certified its decision, and we granted Appellants permission to appeal.

DISCUSSION

I.

We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(2).  We review the Court of Federal Claims's grant of summary judgment de novo.  Pennzoil-Quaker State Co. v. United States, 511 F.3d 1365, 1369 (Fed. Cir. 2008).  Summary judgment is appropriate where "there is no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law."  R. Ct. Fed. Cl. 56(c)(1).  In this case, the pertinent facts are not in dispute, and we are presented solely with a question of statutory interpretation, an issue of law, which we review de novo.  See AD Global Fund, 481 F.3d at 1353.

II.

Appellants contend that the Court of Federal Claims erred in holding that the IRS was entitled to the benefit of the six-year statute of limitations.  Appellants' Br. 15.  The court, according to Appellants, mistakenly took the view that the term "omits" in I.R.C. § 6501(e)(1)(A) embraces not merely the omission from a return of an item of income received by or accruing to a taxpayer, but also an understatement of gross income resulting from a taxpayer's overstatement of an item's basis.  Id. at 17.  Appellants maintain that such a view is contrary to the ruling of the Supreme Court in Colony.  Id.

The theory on which the Court of Federal Claims distinguished Colony rests on a faulty concept, Appellants contend.  Appellants urge that nothing in the Colony opinion

or in its rationale turns on the transaction at issue having been a sale of goods or services in the ordinary course of a trade or business. Id. The Supreme Court, according to Appellants, did not focus on the type of sale or the type of property for which the basis was overstated. Rather, they argue, the Court focused on the meaning of the term "omits" as used in the statute. Id. at 22–23.

Turning to the statutes, Appellants point out that the language of I.R.C. § 275(c) ("omits from gross income an amount properly includible therein"), which was construed and applied by the Supreme Court in Colony, is identical to the language of I.R.C. § 6501(e)(1)(A) ("omits from gross income an amount properly includible therein"), which is at issue in this case. Id. at 21. Therefore, they argue, the "in harmony" statement in Colony indicates that the Court believed the meaning of the language was unchanged. Id. at 20. Appellants contend that this means that the Supreme Court's ruling in Colony with respect to § 275(c) of the 1939 Code—that an alleged overstatement of basis in property does not constitute an omission that extends the period for assessing income tax—is controlling with respect to § 6501(e)(1)(A) of the 1954 Code, which is at issue in this case. Id. at 21.

The government responds that the Court of Federal Claims correctly gave the IRS the benefit of the six-year statute of limitations of § 6501(e)(1)(A), because an understatement of income resulting from an overstatement of the basis of sold property can qualify as an omission from gross income. Government's Br. 17. In the government's view, the court properly construed Colony's holding narrowly by defining "gross income" as gross receipts of a trade or business from sales of goods or services. Id. at 38. To the extent Colony construed "gross income" more broadly, the decision

has been superseded, or at least substantially limited, the government says. Id. at 41–44. The government points to the Colony Court's observation that "the question as to the proper scope" of the extended statute of limitations was "resolved for the future by § 6501(e)(1)(A) of the Internal Revenue Code of 1954." Id. at 44 (quoting Colony, 357 U.S. at 32). The government therefore urges that Colony does not prevent the extended statute of limitations from applying in this case. Id. at 44.

The government contends that its limiting construction of Colony finds support in changes made to the 1939 Code by the 1954 Code. Id. at 28, 41. In making this argument, the government focuses first on subparagraphs (i) and (ii) of I.R.C. § 6501(e)(1)(A), both of which were added to former § 275(c) by the 1954 Code. Subparagraph (i) states that, "[i]n the case of a trade or business, the term 'gross income' means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services." I.R.C. § 6501(e)(1)(A)(i). The government urges that subparagraph (i) sets forth a gross receipts test similar to that adopted in Colony. However, the government states, the provision, by its terms, makes this test applicable only "[i]n the case of a trade or business." Id. at 30. According to the government, to conclude, as Appellants do, that the Colony gross receipts test applies under § 6501(e)(1) to every sort of sale is to make redundant Congress's reference to that same test as applying "[i]n the case of a trade or business." Id. at 30–31. That result, the government contends, would violate the canon that "a legislature is presumed to have used no superfluous words." Platt v. Union Pac. R.R. Co., 99 U.S. 48, 58 (1878). Accordingly, the government argues, since "gross income" in § 6501(e)(1)(A)(i) means

gross receipts only in the limited context of trade or business income from the sale of goods or services, the general definition of gross income must be broader outside that context and must encompass omissions from income attributable to basis overstatement. Government's Br. 31–32.

In addition, the government argues that the addition of subparagraph (ii) to the statute eliminated the Supreme Court's primary justification for its ruling in Colony. Id. at 38. Subparagraph (ii) states that "[i]n determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item." I.R.C. § 6501(e)(1)(A)(ii). Subparagraph (ii) provides a taxpayer a kind of safe haven if it otherwise adequately disclosed in its return the amount omitted from gross income. The government posits that the Colony Court interpreted "omits from gross income" in light of adequate disclosure principles, by emphasizing that an omission must place the IRS "at a special disadvantage in detecting errors." Id. at 38–39 (quoting Colony, 357 U.S. at 36). The government notes that the Court then stated that an omission of gross income caused by inflated basis would not put the IRS at a "special disadvantage." Id. at 39. The government points out that I.R.C. § 6501(e)(1)(A)(ii) now provides a safe harbor for omissions from gross income that do not place the IRS at a "special disadvantage." Thus, the government argues, the adequate disclosure provision renders moot the Court's rationale for stating that an overstated basis does not constitute an omission of gross income. Id.

Moving beyond §§ 6501(e)(1)(A)(i) and (ii), the government notes that Congress added, as part of the 1954 Code, paragraph (2) of § 6501(e). Paragraph (2) covers estate and gift taxes and corresponds to the income tax rule.[8] Id. at 33. The government notes that § 6501(e)(2), unlike § 6501(e)(1)(A), specifically refers to the omission of "items" includible in the gross estate or total gifts. Congress used the word "items," according to the government, to make clear that the six-year period was not to apply because of differences as to the valuation of property. Id. In the government's view, Congress's use of the word "amount" rather than "item" in § 6501(e)(1) confirms that an "omi[ssion] from gross income" under § 6501(e)(1) occurs not only when a taxpayer completely leaves an item of income out of the return, but also when the taxpayer overstates the basis of an asset. Id. at 34.

III.

We conclude that Colony controls the disposition of this case. The Supreme Court stated that the language "omits from gross income an amount properly includible therein" in I.R.C. § 275(c) referred to the "specific situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes." Colony, 357

---

[8]     I.R.C. § 6501(e)(2) provides, in pertinent part and with emphasis added, as follows:

> In the case of a return of estate tax under chapter 11 or a return of gift tax under chapter 12, if the taxpayer omits from the gross estate or from the total amount of the gifts made during the period for which the return was filed items includible in such gross estate or such total gifts, as the case may be, as exceed in amount 25 percent of the gross estate stated in the return or the total amount of gifts stated in the return, the tax may be assessed or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed.

U.S. at 33. In Colony, the "errors in that computation arising from other causes" were "deficiencies . . . based upon the Commissioner's determination that the taxpayer had understated the gross profits on the sales of certain lots of land for residential purposes as a result of having <u>overstated the 'basis'</u> of such lots by erroneously including in their cost certain unallowable items of development expense." <u>Id.</u> at 30 (emphasis added). The Court held that, under these circumstances, the taxpayer had <u>not</u> "omitted from gross income an amount properly includible therein" when it allegedly overstated in its return the basis of property it had sold. That is precisely what is alleged in this case.

A.

We do not discern any basis for limiting <u>Colony's</u> holding concerning the "omits from gross income" language of I.R.C. §275(c) to sales of goods or services by a trade or business. Neither the language nor rationale of <u>Colony</u> indicates such an intent on the part of the Court. The Court interpreted the language of § 275(c) based upon what it viewed as congressional intent and purpose, without ever mentioning the taxpayer's trade or business.

At the same time, we respectfully disagree with the Court of Federal Claims's conclusion that the Court in <u>Colony</u> intended its interpretation of "omits from gross income" in § 275(c) to be limited to the setting of a trade or business. The starting point for the court's approach was the <u>Colony</u> Court's statement, on the one hand, that it could not be said that the language of § 275 was "unambiguous," combined with its statement, on the other hand, that the result it reached in the case was "in harmony with the unambiguous language of § 6501(e)(1)(A) of the Internal Revenue Code of 1954." <u>Salman Ranch</u>, 79 Fed. Cl. at 199 (quoting <u>Colony</u>, 357 U.S. at 33, 37). As seen, the

Court of Federal Claims reasoned that the Supreme Court viewed the identical provisions of §§ 275(c) and 6501(e)(1)A) as being in harmony, even though one provision was ambiguous and the other was not, as a result of the addition of subparagraphs (i) and (ii) to the statute. Id. From there, the court concluded that Colony's holding concerning the reach of § 275(c) was limited to sales of goods or services by a trade or business. Id. at 199–200.

In our view, however, the court's approach incorrectly reads into Colony what is not stated. After analyzing the language of § 275(c) and the pertinent legislative history, the Court in Colony held that "omits from gross income an amount properly includible therein" does not include an overstatement of basis, as was alleged in the case of the taxpayer before it, and the Court did not say that its holding was limited to sales of goods or services by a trade or business. We are not prepared to conclude—based simply upon the Court's reference to ambiguity in § 275(c) and the lack thereof in § 6501(e)(1)(A)—that the Court's facially unqualified holding nevertheless carries with it a qualification.

B.

We recognize that the Supreme Court in Colony did not purport to interpret I.R.C. § 6501(e)(1)(A). In our view, however, several considerations weigh in favor of extending the Colony interpretation of I.R.C. § 275(c) to I.R.C. § 6501(e)(1)(A).

Most importantly, the "omits from gross income an amount properly includible therein" language is identical in the 1939 and 1954 Codes. We acknowledge that Congress did not have before it Colony, a 1958 decision, when it enacted § 6501(e)(1)(A) in 1954. Nevertheless, the fact remains that Colony represents an

interpretation of the very same language that is now found in § 6501(e)(1)(A), and in the years since <u>Colony</u>, Congress has not indicated that the Court's interpretation of the language of § 275(c) should not apply to § 6501(e)(1)(A).  This is true despite the post-<u>Colony</u> debate over whether § 6501(e)(1)(A) is triggered only when an item of income is entirely omitted from a return.[9]  <u>See</u> <u>Bob Jones Univ. v. United States</u>, 461 U.S. 574, 600–02 (1983) (construing congressional inaction as acquiescence where the interpretation of statutory language generated controversy and Congress did not amend the statute).  Given that <u>Colony</u> was decided over fifty years ago, we believe that, if Congress had so desired, it would have expressed its intention to change the meaning of the relevant language.

In addition, we think the <u>Colony</u> Court's rationale for its holding applies with equal force to the 1954 Code.  The Court determined that statements in the legislative history

---

[9]    <u>See</u> <u>CC & F W. Operations Ltd. P'ship v. Comm'r</u>, 273 F.3d 402, 406 n.2 (1st Cir. 2001) ("Whether <u>Colony</u>'s main holding carries over to [§] 6501(e)(1) is at least doubtful.  [I.R.C. § 6501(e)(1)(A)(i)] adopts Justice Harlan's gross receipts test but only for sales of goods and services.  The arguable implication is that it does not apply under [§] 6501 to other types of income.  But we need not resolve this issue." (citations omitted)); <u>Phinney v. Chambers</u>, 392 F.2d 680, 685 (5th Cir. 1968) ("We conclude that the enactment of subsection (ii) as a part of [§] 6501(e)(1)(A) makes it apparent that the six year statute is intended to apply where there is either a complete omission of an <u>item</u> of <u>income</u> of the requisite amount or misstating of the nature of an item of income which places the 'commissioner . . . at a special disadvantage in detecting errors.'" (quoting <u>Colony</u>, 357 U.S. at 36)).  District courts, the Court of Federal Claims, and the Tax Court have arrived at different conclusions as to the applicability of <u>Colony</u> to § 6501(e)(1)(A).  <u>Compare</u> <u>Home Concrete & Supply LLC v. United States</u>, No. 7:06-CV-181-FL, 2008 WL 5611987, at *8 (E.D.N.C. Nov. 21, 2008) (holding that an overstatement of basis can constitute an omission from gross income within the meaning of I.R.C. § 6501(e)(1)(A)); <u>Brandon Ridge Partners v. United States</u>, 100 A.F.T.R. 2d (RIA) 5347, 5353 (M.D. Fla. 2007) (same); <u>Salman Ranch</u>, 79 Fed. Cl. 189 (same); <u>with</u> <u>Grapevine Imports, Ltd. v. United States</u>, 77 Fed. Cl. 505 (2007), <u>appeal docketed</u>, No. 2008-5090 (Fed. Cir. June 27, 2008) (extending the <u>Colony</u> Court's interpretation of "omits from gross income an amount properly includible therein" to I.R.C. § 6501(e)(1)(A)); <u>Bakersfield Energy Partners, LP v. Comm'r</u>, 128 T.C. 207, 215 (2007), <u>aff'd</u>, 568 F.3d 767 (9th Cir. 2009) (same).

of the pre-1939 Code pertaining to § 275(c) (e.g., statements referring to when taxpayers "leave out of their return items," "overlook[ ] an item," or "fail[ ] to report a dividend") were "persuasive indications that Congress merely had in mind failures to report particular income receipts and accruals, and did not intend the five-year [now six-year] limitations period to apply whenever gross income was understated." Colony, 357 U.S. at 35. These references are as persuasive to us as they were to the Supreme Court in Colony.

Referring to § 275(c), the Colony Court stated that while it could not be said that the statutory language was "unambiguous," it was "inclined to think that the statute on its face len[t] itself more plausibly to the taxpayer's interpretation." Id. at 33. In Colony, the taxpayer advanced a plain meaning of the "omits from gross income" language in § 275(c). Id. at 32–33. By this logic, we think it prudent to take note of the ordinary meaning of "omits" today. See Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 476 (1994) (recognizing that, in the absence of a statutory definition, statutory terms are construed in accordance with their ordinary or natural meaning). The meaning of "omits" in today's parlance appears to be no different than its meaning at the time of the Colony decision. See, e.g., The American Heritage Dictionary of the English Language 1227 (4th ed. 2000) ("to fail to include or mention; leave out"). We thus give to "omits" in § 6501(e)(1)(A) the same meaning the Supreme Court gave to the word in § 275(c). In other words, "omits" in § 6501(e)(1)(A) means to affirmatively "leave out."

C.

A cardinal rule of statutory construction is that courts should construe statutes "so as to avoid rendering superfluous" any statutory language. See Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 112 (1991). Thus, if following Colony in this case would have the effect of rendering either the gross receipts or adequate disclosure provisions of § 6501(e)(1)(A) superfluous, we would be faced with a situation in which we would need to reconsider the applicability of Colony's holding to § 6501(e)(1)(A).

We conclude, however, that neither the gross receipts provision nor the adequate disclosure provision requires that we depart from Colony and define "omits" to mean anything except "left out." First, paragraph (A) sets forth the "General rule" of the section. The rule is that "[i]f the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed." I.R.C. § 6501(e)(1)(A). The rule involves two determinations: a first determination, which involves identifying when a taxpayer "omits from gross income an amount properly includible therein"; and a second determination, which involves calculating whether the omission from gross income was "in excess of 25 percent." The first determination, upon which Colony turned, contemplates the "specific situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income," Colony, 357 U.S. at 33. The second determination involves a straightforward mathematical calculation.

We do not view subparagraph (i) of § 6501(e)(1)(A), the gross receipts provision, as superfluous under our reading of the statute. By its terms, paragraph (A) of § 6501(e)(1)(A) is not limited to any particular type of "taxpayer." In other words, the "taxpayer" referenced in the paragraph can be an individual or an entity acting as a trade or business. That brings us to subparagraph (i). It states: "In the case of a trade or business, the term 'gross income' means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services." I.R.C. § 6501(e)(1)(A)(i). It seems to us that what subparagraph (i) does is tell the reader how, for purposes of paragraph (A), "gross income" is calculated when the activities of the "taxpayer" at issue are of a trade or business nature. Unlike subparagraph (i), Colony did not speak to the calculation of "gross income." Rather, it identified the situations in which a taxpayer "omits from gross income an amount properly includible therein." Our reading of § 6501(e)(1)(A), which is based on Colony, is that the language "omits from gross income" does not extend to an alleged overstatement of basis in property. We do not see how this reading of the statutory language renders subparagraph (i) superfluous, and neither does the Ninth Circuit. See Bakersfield Energy Partners, LP v. Comm'r, 568 F.3d 767, 776 (9th Cir. 2009) ("[W]e are not convinced that applying Colony to the 1954 Code would render § 6501(e)(1)(A)(i) superfluous," because "Colony's holding . . . affects only [the "gross income" omitted], by defining what constitutes an omission from gross income."). Put most simply, we do not see how subparagraph (i), which explains how "gross income" is calculated when a trade or

business is involved, is made superfluous, by saying that an overstatement of basis is not an omission from gross income.

The legislative history of § 6501(e)(1)(A)(i) is consistent with our observation that subparagraph (i) is not rendered superfluous by our reading of § 6501(e)(1)(A). Congress added subparagraph (i) to resolve a conflict between the IRS and taxpayers about how to calculate gross income in the case of a trade or business. See, e.g., Hearings Before the Senate Comm. on Finance on H.R. 8300 (part 2), 83rd Cong. 984 (1954) (letter of Harry N. Wyatt) (noting "disagreement evidenced by the case law between the [IRS] and some of the courts as to whether . . . [i]n the case of a business, the term 'gross income' should be construed as gross receipts and gross sales, or as net receipts and net sales").  Under § 275(c), it was unclear whether, in calculating "gross income" in the case of a trade or business, the IRS should deduct certain business expenditures, such as the cost of sales or services.  In response, Congress enacted subparagraph (i), which made it clear that "gross income" in the case of a trade or business was calculated prior to diminution by the cost of such sales or services. See H.R. Rep. No. 83-1337, at A414 (1954), reprinted in 1954 U.S.C.C.A.N. 4017, 4561 ("The term gross income as used in this paragraph has been redefined to mean the total receipts from the sale of goods or services prior to diminution by the cost of such sales or services.").  In light of this conflict, we believe that Congress enacted subparagraph (i), not to define "omits from gross income an amount properly includible therein," but to assist the IRS in its calculation of whether any omitted gross income exceeded 25% of the gross income stated in the return.  Thus, the legislative history of § 6501(e)(1)(A)(i)

does not detract from our view that the gross receipts provision is not rendered superfluous by our reading of § 6501(e)(1)(A).

Neither do we think that the adequate disclosure provision, subparagraph (ii), somehow renders moot the Supreme Court's construction of the phrase "omits from gross income an amount properly includible therein," as argued by the government. We agree with the government that the adequate disclosure provision is related to the policy concern expressed by the <u>Colony</u> Court when it stated, "We think that in enacting § 275(c) Congress manifested no broader purpose than to give the Commissioner an additional two years [now three years] to investigate tax returns where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors." 357 U.S. at 36. As noted, subparagraph (ii) provides a safe harbor in terms of the § 6501(e)(1)(A) calculation for an amount which, although omitted from gross income stated in the return, is nevertheless adequately disclosed. Under these circumstances, the IRS presumably is not at a "special disadvantage." Assuming the policy concern expressed by the Supreme Court in <u>Colony</u> and the adequate disclosure provision are related, we think that is not an adequate reason to conclude that <u>Colony</u> has been rendered moot.

Finally, we do not think that use of the word "amount" in § 6501(e)(1)(A), in contrast to use of the word "item" in § 6501(e)(2), requires us to alter our conclusion that the language "omits from gross income an amount properly includible therein" in § 6501(e)(1)(A) does not include an overstatement of basis. In <u>Colony</u>, the Supreme Court considered whether there was any significance in the "use of the word 'amount' (instead of, for example, 'item')." <u>Id.</u> at 32. The Court looked to the legislative history

and found several references to instances where taxpayers left out "items" from their tax returns. Id. at 34–35. As seen, based on these references, the Court stated that "Congress manifested no broader purpose than to give the Commissioner an additional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commission is at a special disadvantage in detecting errors." Id. at 36. The Court then held that "omits from gross income an amount properly includible therein" did not include an overstatement of basis in property. Under these circumstances, the use of the word "item" in § 6501(e)(2), the provision relating to estate and gift taxes, does not persuade us to deviate from the Colony Court's interpretation of statutory language identical to what is before us.

## D.

In sum, we conclude that the Supreme Court's interpretation of the language "omits from gross income an amount properly includible therein" in I.R.C. § 275(c) controls the interpretation of the identical language in I.R.C. § 6501(e)(1)(A). For this reason, we hold that the alleged overstatement of the basis of Salman Ranch by the Partnership did not constitute an omission from gross income under § 6501(e)(1)(A). Accordingly, the IRS is not entitled to the benefit of the six-year statute of limitations set forth in § 6501(e)(1)(A). The three-year limitations period of § 6501(e)(1)(A) controls, which means that the FPAA was untimely and therefore invalid. Our holding today is consistent with the June 17, 2007 decision of the Ninth Circuit in Bakersfield Energy Partners, 568 F.3d at 778.

CONCLUSION

Based upon the foregoing, we reverse the Court of Federal Claims's grant of partial summary judgment in favor of the government. The case is remanded to the court with the instruction that it enter judgment in favor of Appellants.

<u>REVERSED</u> and <u>REMANDED</u>

COSTS

Each party shall bear its own costs.

# United States Court of Appeals for the Federal Circuit

2008-5053

SALMAN RANCH LTD and WILLIAM J. SALMAN,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in case no. 06-CV-503, Judge Christine O.C. Miller.

NEWMAN, <u>Circuit Judge</u>, dissenting.

I respectfully dissent, for the Court of Federal Claims was correct in affirming the action of the Internal Revenue Service in applying the extended six-year period of limitations of 26 U.S.C. ("I.R.C.") §6501(e)(1)(A) to the assessment of income tax on the sale of the Salman Ranch.[1] The IRS explained that the standard three-year limitations period did not apply because the taxpayer omitted from gross income "an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return." 26 U.S.C. §6501(e)(1)(A). The parties stipulated, for the

---

[1] <u>Salman Ranch Ltd v. United States</u>, 79 Fed. Cl. 189 (2007).

purpose of determining the applicable limitations period, that the taxpayer incorrectly included certain items of cost in its tax basis, thereby overstating the basis and reducing the taxable gain on the sale of the Ranch.

The appellants argue that the Supreme Court, in Colony, Inc. v. Commissioner, 357 U.S. 28 (1958), held that the three-year period of limitations cannot be extended on the ground of an erroneous overstatement of basis, even when the 25 percent criterion of substantial omission is met. The appellants also argue that other criteria of subsection 6501(e)(1)(A) bar application of the six-year period, pointing out that the gross proceeds of the sale of the Ranch were fully reported, in keeping with subsection 6501(e)(1)(A)(i); that this reporting provided adequate disclosure to the IRS of any errors, in keeping with subsection 6501(e)(1)(A)(ii); and that an overstatement of basis is not an omission from gross income, as was recognized by the Court in Colony. The Court of Federal Claims held that these arguments did not negate application of the six-year period of limitations, and granted the government's motion for summary judgment. In my view the Court of Federal Claims correctly applied the law to the undisputed or stipulated facts.

BACKGROUND

The transactions are not disputed. In brief, since January 1, 1987 the Salman Ranch in New Mexico was owned by a limited partnership, in which the partners were family members and a family trust. On or about October 8, 1999 the partners individually entered into various short sales of U.S. Treasury Notes, for cash proceeds totaling $10,982,373. On or about October 13, 1999 the partners transferred these cash proceeds and their short positions to the Salman Ranch partnership. Soon

thereafter the partnership closed all of the short positions, at a cost of $10,980,688. On November 30, 1999 the partners transferred their interests, through intervening family partnerships, under conditions that terminated the Salman Ranch partnership as a matter of law, see I.R.C. §708(b)(1)(B),[2] and formed the new Salman Ranch partnership that on December 23, 1999 sold part of the Ranch for a total price of $7,188,588 (including an option for the remainder of the Ranch).

Tax returns for 1999 were duly filed. The original Salman Ranch partnership filed a return for the period ending November 30, 1999. The return stated an election under I.R.C. §§754 and 743(b) to adjust the basis of partnership property, but did not state the nature or amount of the adjustment.

The new Salman Ranch partnership filed a separate 1999 return covering the one-month period of December 1999. The return reported the sale price of $7,188,588 for the Ranch, and a tax basis of $6,850,276. This basis included an amount from the Treasury Note transactions, although the return did not so state,[3] and the difference of $338,312 was reported as "net section 1231 gain."[4] This return also contained a statement of election under I.R.C. §§754 and 743(b) to adjust the basis of partnership property, but did not state the nature or amount of the adjustment.

---

[2]    The parties refer to §708(b)(1)(B) as a "technical termination" because there was a record change in more than 50% of the ownership interests in the partnership's property.

[3]    It is agreed that the basis in the Ranch without the Treasury Note transactions was $1,917,978.

[4]    Section 1231 is a capital gains provision that includes sales of "real property used in the trade or business, held for more than 1 year," as long as that property is not "inventory" or property held "primarily for the sale to customers in the ordinary course of his trade or business," with certain exceptions not relevant here. See I.R.C. §1231(b)(1).

The individual partners' tax returns included amounts in accordance with their shares in the partnership, including their share of the net section 1231 gain from the sale of the Ranch. Several partners reported small losses on the Treasury Note transactions. No return, for the Ranch partnerships or the partners, flagged the relationship between the Treasury Note transactions and the calculation of basis in the Ranch property.

Six years minus one week later, the IRS issued a Final Partnership Administrative Adjustment (FPAA), reducing the basis of the Ranch to $1,917,978, thereby increasing the capital gain from $338,312 to $4,906,261. The IRS stated that "Salman Ranch Ltd. was availed of for improper tax avoidance purposes by artificially overstating basis in the partnership interests of its partners through a transaction that was substantially similar to that described in Notice 2000-44." Notice 2000-44, entitled "Tax Avoidance Using Artificially High Basis," describes a procedure that the IRS calls "Son of BOSS," where "BOSS" stands for "Bond and Option Sales Strategy," in which transactions in securities are employed to create an artificially high basis in unrelated property. 2000-2 C.B. 255. See generally Kligfield Holdings v. Comm'r, 128 T.C. 192, 194-99 (2007) (describing "Son of BOSS" as a tax avoidance scheme). According to the FPAA, "The proceeds from the short sale of the Treasury Notes and other assets purportedly contributed to Salman Ranch Ltd. are treated as never having been contributed to said partnership and any gains or losses purportedly realized by said partnership are treated as having been realized by its partners."

Salman Ranch Ltd. (the appellant herein, along with William J. Salman, as tax matters partner) filed suit in the Court of Federal Claims pursuant to I.R.C. §6226,

arguing that in accordance with statute and precedent the three-year limitations period of I.R.C. §6501(a) applies, whereby the FPAA was untimely and void. The panel majority, reversing the judgment of the Court of Federal Claims, holds that the Supreme Court in Colony, supra, established the rule that an erroneous overstatement of basis is not grounds for extending the limitations period, and that this rule applies in this case. However, the Court's holding in Colony does not control the situation herein.

DISCUSSION

Section 6501 of the Revenue Code of 1954 states the time periods during which the IRS can act to assess unpaid taxes. Subsection 6501(a) states the general rule that assessments must be made "within 3 years after the return was filed," and subsequent subsections state exceptions to the general rule. The exception that is here at issue sets the statutory limit at six years when there has been a "substantial omission" from gross income:

> **§6501(e) Substantial omission of items.**—Except as otherwise provided in subsection (c)—
>> **(1) Income taxes.**—In the case of any tax imposed by subtitle A—
>>> **(A) General rule.**—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—
>>>> **(i)** In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and
>>>> **(ii)** In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or

in a statement attached to the return, in a manner
adequate to apprise the Secretary of the nature and
amount of such item.

This extension to six years does not require a showing or charge of fraud or evasion. See Badaracco v. Comm'r, 464 U.S. 386, 392 (1984) (contrasting §6501(e)(1)(A), which "provides an extended limitations period for the situation where the taxpayer's return nonfraudulently omits more than 25% of his gross income," with the unlimited extensions of §6501(c)).

The two subparagraphs (i) and (ii) were added in 1954 to the predecessor statute, §275(c) of the 1939 Tax Code. In explaining the 1954 Code revision, the legislative record states that "[s]everal changes from existing law have been made in subsection (e) of this section," explaining that in §6501(e)(1)(A):

The term gross income as used in this paragraph has been redefined to
mean the total receipts from the sale of goods or services prior to
diminution by the cost of such sales or services.

H.R. Rep. No. 83-1337, at A414 (1954), reprinted at 1954 U.S.C.C.A.N. 4017, 4561; S. Rep. No. 83-1622, at 584 (1954), reprinted at 1954 U.S.C.C.A.N. 4621, 5233.

A

The Court remarked in Colony that the ambiguity treated in the Colony decision was resolved by this 1954 legislative change. See Colony, 357 U.S. at 31-32. Thus the Court limited its holding to interpretation of §275(c) of the 1939 Code, while observing that "the conclusion we reach is in harmony with the unambiguous language of §6501(e)(1)(A)," id. at 37. Both the Court in Colony and the Court of Federal Claims recognized that the legislative changes, implemented through the addition of subparagraphs (i) and (ii), resolved the situation confronted in Colony, for there the

taxpayer had fully reported the total receipts of its business in sales of residential lots, but had overstated the basis of the sales in that it included certain unallowable development costs. The Court held that these fully disclosed overstatements of costs incurred did not serve to extend the period of limitations.

My colleagues on this panel hold that Colony requires that an erroneous overstatement of basis can never serve to extend the period of limitations. That is an unwarranted enlargement of the holding in Colony. In Colony the taxpayer reported its gross receipts as a developer and seller of real property, and included in its basis some development costs that the IRS determined were not allowable. The Court held that the taxpayer could not, after the three-year period of limitations, be assessed for omitted net income under the 1939 Code §275(c), because adequate detail of the basis information was shown on the tax return itself. See Colony, Inc. v. Comm'r, 26 T.C. 30, 35-40 (1956) (discussing details of taxpayer's basis calculations), aff'd, 244 F.2d 75 (6th Cir. 1957), rev'd, 357 U.S. 28 (1958). The Court found that the IRS had all the information it needed to discover the error, and held that the three-year limitations period was not subject to extension on these facts. The Court explained:

> We think that in enacting §275(c) Congress manifested no broader purpose than to give the Commissioner an additional two [now three] years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commission is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item.

357 U.S. at 36. This rationale aligns with the "safe harbor" for adequate disclosure as codified in 1954 at subsection 6501(e)(1)(A)(ii).

The Court of Federal Claims found that, unlike the situation in Colony, the Salman Ranch partnership did not disclose the various transactions in Treasury Notes

in a way that would alert the IRS to the content of the basis adjustment for the Ranch sale. The court observed that the partnerships' and partners' tax returns provided no "idea of the method by which plaintiffs reached their calculation of basis." Salman Ranch, 79 Fed. Cl. at 204. The court stated: "To understand how plaintiffs reached their basis step-up figure, one must have a 'clue' that a transfer of the proceeds from the short sale of the Treasury Notes to the partnership took place—a fact that is not apparent from the face of the returns viewed together." Id.

The Court of Federal Claims found that the "critical facts that the Treasury Notes transaction was a short sale and that the accompanying obligation to close the short position was transferred to the partnership, along with the proceeds, are not disclosed in substance or by implication anywhere in the returns." Id. Although the appellants argue that nothing prevented the IRS from investigating the sale of the Ranch within the three-year limitations period, their manner of reporting indeed placed the Commissioner at a "special disadvantage in detecting errors," Colony, 357 U.S. at 36. The error herein amounts to at least 25 percent of gross income, and therefore the provisions of §6501(e)(1)(A) authorize the enlargement of the period of limitations.

My colleagues on this panel are mistaken in their holding that the Salman Ranch tax returns are immune from assessment because the three-year limitations period has passed. Neither the Court's holding in Colony, nor §6501(e)(1)(A), supports this conclusion. The question is not whether the basis for the Salman Ranch sale was correct, for the taxpayer now concedes that it was not. The question is whether the period of limitations is subject to extension to six years. My colleagues are mistaken in

holding that the Court's ruling in <u>Colony</u> requires that an incorrectly calculated basis can never justify enlargement of the period of limitations.

B

The Court of Federal Claims ruled that the "adequate disclosure" provision of subsection 6501(e)(1)(A)(ii) was not met. This ruling is consistent with the view of other circuits. For example, the Fifth Circuit has stated:

> We conclude that the enactment of subsection (ii) as a part of section 6501(e)(1)(A) makes it apparent that the six year statute is intended to apply where there is either a complete omission of an item of income of the requisite amount or misstating of the nature of an item of income which places the "commissioner . . . at a special disadvantage in detecting errors."

<u>Phinney v. Chambers</u>, 392 F.2d 680, 685 (5th Cir. 1968) (quoting <u>Colony</u>, 357 U.S. at 36). The Tax Court also has stated that "with respect to taxable years beginning after August 17, 1954, Congress had already resolved the problem addressed in [<u>Colony</u>] by enacting section 6501(e)(1)(A) of the 1954 Code." <u>Lawson v. Comm'r</u>, 67 T.C.M. (CCH) 3121, 1994 WL 273946, at *4.

Courts have had varying views about the application of <u>Colony</u> in different fact settings. For example, in <u>CC&F Western Operations Ltd. Partnership v. Commissioner</u>, 273 F.3d 402 (1st Cir. 2001), the court noted that "Whether <u>Colony</u>'s main holding carries over to section 6501(e)(1) is at least doubtful. That section's first 'special rule' adopts Justice Harlan's gross receipts test but only for sales of goods and services. The arguable implication is that it does not apply under section 6501 to other types of income." <u>Id.</u> at 406 n.2. In <u>Bakersfield Energy Partners LP v. Commissioner</u>, 568 F.3d 767 (9th Cir. 2009), the court applied <u>Colony</u> to hold that a revaluation of a property's oil and gas reserves as an adjustment to basis was not grounds for extension of the three-

year limitations period, for the partnership explicitly disclosed the transfers and basis calculation with the partnership's tax return. In contrast with the Salman Ranch transactions, in <u>Bakersfield</u> as in <u>Colony</u> the items of basis were directly related to the product sold and the business of the seller/taxpayer. Transactions in Treasury Notes are unrelated to either the ranching business or the sale of the Ranch.

Transactions that are economically meaningless in the context for which tax benefits are claimed are not, by virtue of the Court's holding in <u>Colony</u>, validated by simply designating the costs as "basis" for unrelated property. <u>See, e.g.</u>, <u>Kornman & Assocs. v. United States</u>, 527 F.3d 443, 456, 462 (5th Cir. 2008) ("Appellants' premeditated attempt to transform this wash transaction (for economic purposes) into a windfall (for tax purposes) is reminiscent of an alchemist's attempt to transmute lead into gold."); <u>Cemco Investors, LLC v. United States</u>, 515 F.3d 749, 751 (7th Cir. 2008) ("A transaction with an out-of-pocket cost of $6,000 and no risk beyond that expense, while generating a tax loss of $3.6 million, is the sort of thing that the Internal Revenue Service frowns on. The deal as a whole seems to lack economic substance . . . .").[5]

The Federal Circuit has applied the economic substance doctrine in various contexts, and in <u>Coltec Industries, Inc. v. United States</u>, 454 F.3d 1340 (Fed. Cir. 2006), this court held that a company's transfer of certain liabilities to effect an increase in

---

[5] District courts that have addressed similar situations have held that the longer limitations period applies. <u>See</u> <u>Home Concrete & Supply, LLC v. United States</u>, 599 F. Supp. 2d 678, 687 (E.D.N.C. 2008) (§6501(e)(1)(A) applies where taxpayers used short sales of Treasury Notes to manipulate basis of partnership-held assets); <u>Burks v. United States</u>, No. 3:06-CV-1747-N (N.D. Tex. June 13, 2008) (docket entry 36) (§6501(e)(1)(A) applies where taxpayers engaged in a "Son of BOSS" scheme); <u>Brandon Ridge Partners v. United States</u>, No. 8:06-cv-1340-T-24MAP, 2007 WL 2209129, at *8 (M.D. Fla. July 30, 2007) (basis of stock was improperly overstated upon various transactions involving Treasury Notes).

basis lacked economic substance, stating: "Over the last seventy years, the economic substance doctrine has required disregarding, for tax purposes, transactions that comply with the literal terms of the tax code but lack economic reality." Id. at 1352. The Court of Federal Claims applied Coltec to rule, in Jade Trading, LLC v. United States, 80 Fed. Cl. 11, 52 (2007), that a "Son of BOSS" scheme lacked economic substance. These consistent views weigh against my colleagues' holding that fidelity to Colony requires that the overstatement of the basis of the Ranch is insulated from inquiry after the three-year period of limitations.

This appeal concerns solely the question of which limitations period applies, and for the purpose of resolving this question the appellants have stipulated that their basis calculation was in error. However, it is highly relevant that the nature of the erroneous basis claim herein is markedly different from the more conventional basis error in Colony, and no "clue" to this different nature was presented with the Salman Ranch returns. To summarize precedent, courts have generally applied the rationale of Colony to deny extension of the limitations period where taxpayers made errors in basis that were reasonably identifiable from the information in their tax returns. But courts have applied the six-year period where basis errors arose from economically meaningless transactions that were unrelated to the property sold and that were not disclosed on the returns. This case is a paradigm of the latter category.

C

The appellants argue that even if this court should rule that their overstatement of basis is not shielded by Colony, nonetheless section 6501(e)(1)(A) does not extend the period of limitations beyond three years, because the "gross receipts" from the sale of

the ranch were fully reported. The appellants argue that no more is required by subsection 6501(e)(1)(A)(i), which defines "gross income" to mean gross receipts (rather than net gains) in the context of sales of goods or services by a trade or business. That argument is negated by the partnership's reporting of the proceeds from sale of the Ranch as "net section 1231 gain." Section 1231 is directed to "real property used in the trade or business, held for more than 1 year." See n.2 supra. The Ranch sale proceeds are not income from sales of "goods or services," but are gain from the sale of real property. For section 1231 income, the Tax Code states that it is the gain that constitutes gross income. See I.R.C. §61(a) (defining gross income to include "Gains derived from dealings in property"); Treas. Reg. §1.61-6(a) ("Gain realized on the sale or exchange of property is includible in gross income, unless excluded by law.").

The appellants propose that the Ranch itself is a "good or service" sold by the partnership in the course of business, and that the definition of gross income in subsection 6501(e)(1)(A)(i) applies. There is no support for that theory. The appellants seek analogy in a Treasury Regulation that pertains to itemized deductions for charitable contributions, see Treas. Reg. 1.170A-13(f)(5). However, the Court of Federal Claims correctly observed that "Section 1231 income is treated quite differently for tax purposes than 'trade or business income,' which is reported and taxed as ordinary income," explaining that Treasury Regulation 1.170A-13(f)(5) does not support the appellants' reading of subsection 6501(e)(1)(A)(i)). Salman Ranch, 79 Fed. Cl. at 201 & n.11. The appellants have shown no error in the court's holding that the "gross receipts" provision in subsection (i) does not apply to the income at issue in this case.

CONCLUSION

Colony was not a broad exoneration of inquiry, after three years, into items simply because they are denominated as "basis." The Court of Federal Claims gave correct effect to the full text of I.R.C. §6501(e)(1)(A), and nothing in its decision misconstrues the Court's holding in Colony. The taxpayers herein omitted over 25 percent of their gross income, but did not provide sufficient information to apprise the Commissioner of the nature and amount of the omission. It seems clear that the criteria of subsection 6501(e)(1)(A) were met, extending the limitations period to six years. From my colleagues' contrary ruling, I respectfully dissent.